Furniss and Brown were sued as joint owners of the steamer Rhode Island, for labor and materials furnished in fitting up the vessel. To fix a liability upon Furniss, the plaintiffs gave in evidence an agreement entered into on the 1st November, 1849, and before the work was commenced, between Brown and Furniss in relation to the purchase, alteration and fitting up of the vessel as an ocean steamer. Some evidence was also adduced tending to show that Furniss was occasionally at the dock where the vessel laid whilst the work was progressing, and twice directed the manner in which certain work should be done. The defendant Brown employed the plaintiffs to make the alterations, and they were completed, with the exception of three days' labor, prior to the 20th January, 1850. This was the whole case made by the plaintiffs. The judge refused to dismiss *Page 619 
the complaint as against Furniss, and subsequently directed the jury to find a verdict against both of the defendants for the amount of the account claimed.
There was obviously no pretext for a recovery against Furniss, unless he was a joint owner of the vessel when the plaintiffs performed the work and furnished the materials at the request and on the employment of Brown, and whether he had a joint interest at that time depended wholly upon the construction to be placed on the contract of November, 1849. If, as was held by the court below, that agreement is to be construed as an absolute sale of one half of the steamer, in the condition she was at its date, and the title immediately vested, then Furniss was a joint owner and prima facie liable with Brown for the cost of the alterations and repairs. But if it be apparent, from the whole instrument, that a present, unconditional sale was not in the contemplation of the parties, and it was not intended that an interest in the property should vest in Furniss until the vessel was fitted up by Brown, ready for the joint adventure in which she was to be employed, then Furniss was in no sense an owner when the plaintiffs' demand accrued.
I am inclined to regard the contract as wholly executory, although the word "sells" is used in the first clause, which, if standing alone, would import a present, unconditional sale, and so far an executed agreement. But it is connected with other terms and provisions leaving it quite satisfactory to my mind that it was not the intention of the parties that there should be a joint ownership of the vessel until she was fitted and ready for the joint adventure contemplated by the agreement.
It is apparent that the controlling purpose of entering into the contract was the joint employment of the vessel in the coasting trade. Apart from this, Furniss neither desired an interest in a steamer only fitted and furnished for the transportation of passengers on the Sound, nor was it necessary that she should be altered or refitted. The refitting *Page 620 
looked to the controlling purpose of the parties. Brown was the owner of the boat. He was a ship-builder, and she was in his sole possession. Furniss was a merchant. Under these circumstances, and having solely in view the joint speculation, the agreement was concluded, Furniss was to become a purchaser of one-half the boat, Brown fitting her up in a suitable manner to proceed to the Pacific and trade along the west coast of America, or in the rivers of the same, as might be thought by Furniss the most advantageous. He was to furnish boats, and provide the necessary carpenter's work, smith-work, sails, rigging and steam machinery to adapt her to the Pacific trade, at an expense not to exceed $10,000. Furniss was to be the sole agent of the steamer in the port of New-York, and to have the appointment of all other agents on the Atlantic and Pacific coasts; to receive a commission on all receipts for freight and passengers; and account, from time to time, for all money that might come into his hands, to Brown or other owners of the boat, first paying himself all advances made on her account. The price or valuation of the vessel, as she was at the date of the agreement, was fixed at $50,000, and Brown was to make repairs and alterations, to fit her for the new business, at a cost not to exceed $10,000 more, and as much less as possible. Furniss was to pay to Brown, for one-half of the vessel, in her original condition, the sum of $25,000, in his notes, at fifteen months, not to be given and dated cotemporaneously with the agreement, and to run from that time, but after Brown had caused the alterations and repairs to be made, and she was "fit and ready for sea, coals and provisions excepted." So, also, Furniss was to pay (to the extent of $10,000 on the whole) one-half of the expense incurred by Brown in fitting the vessel for ocean service; such payment to be made in his notes, at fifteen months, to be given and dated, and to run, from the time she was "out of the workmen's hands, and fit for sea." The vessel was to continue under the control, and in the possession of *Page 621 
Brown, until the outfits which he had stipulated to make were completed. It was evidently not within the intention of the parties that Furniss should pay for half the steamer, or half the expense of the outfit, unless she was fitted for the purpose in view; nor did he obligate himself to do so. He was to make payment in his notes, not to be immediately given, but after she was fitted and ready for sea, and from that time they were to run for fifteen months. There was no obligation resting on him to pay, in the form stipulated, one-half of the estimated value of the vessel, until Brown had made the changes which he agreed to effect. Had those changes never been made, Furniss could not have been called on to give his notes, or make payment. His obligation to pay was, by the agreement of the parties, to depend on a contingent event, and unless that contingency happened, it was not their intention that his notes should be given at all. It seems quite plain to me, that the parties intended to make the alterations to be effected by Brown a precedent condition to the transfer of title to Furniss, and until the vessel was ready to be delivered to the latter, "fit for sea," it was not meant that the sale should take effect. Brown was to change the character of the vessel from a Sound to an ocean steamer, and when this was done, and not before, the agreement contemplated that the entire possession of the boat was to be delivered by Brown to Furniss. The delivery of the vessel, and the payment of one-half of her estimated and then fully ascertained value in her new condition, were to be concurrent acts. It was only when the event occurred of her being fit and ready for sea, that the precise consideration to be paid by Furniss could be ascertained. It could be no more than $30,000, and it might be less. If the cost of the alterations exceeded $10,000, Brown was to be responsible beyond the sum of $5,000. Had the vessel been destroyed by fire, before she was fitted and ready for sea, I cannot doubt that it would have been *Page 622 
wholly Brown's loss, and Furniss (the contingency never happening upon which he was to make payment) would not have been liable to him for the price. As Furniss' obligation to pay was made conditional, it is clearly to be inferred that the parties intended that the title to one-half the vessel should not pass to Furniss until the condition was performed. The sale contemplated was one upon credit; the term of credit to commence when the transfer of the property should be complete. The term of credit was not to commence until the outfits were completed by Brown, nor was there to be any change in the possession of the vessel, nor Furniss obligated to do anything to consummate the sale. If the words "agrees to sell" were substituted in the first clause of the instrument for the word "sells," there would scarcely be a question; as then all the provisions would be entirely consistent, and point only to the intent I have indicated. An adherence to the literal purport of the word "sells" would overrule the intention which the provisions of the agreement, as a whole, plainly indicate. In the construction of a written instrument it is a well established rule that to give effect to the intention of the parties, courts may transpose or even substitute words for those used in the writing.
The intention, it seems to me, is clearly manifest, that the title to half the boat was not to vest in Furniss until she was fitted out for the new service, and ready to be delivered into his sole possession, and he required to make payment. Until then, the agreement of sale was executory. It follows that there was no absolute sale in presenti; and when the work was done and materials furnished by the plaintiffs, in the alteration of the vessel, Furniss was not a joint owner, nor did he have any vested interest in her. As against him, the plaintiffs did not make aprima facie case for a recovery.
The judgment of the superior court should be reversed, and a new trial ordered. *Page 623 
A.S. JOHNSON, SELDEN, MITCHELL and T.A. JOHNSON, Js., concurred in reversing the judgment and ordering a new trial.
DENIO, C.J., dissented, and was in favor of affirmance.
Judgment reversed.